OPINION *Page 2 
{¶ 1} Defendant-Appellant, Todd M. Moore, appeals the judgment of the Marysville Municipal Court denying his motion for a new trial and evidentiary hearing, sentencing him to a thirty-day jail term, imposing three years of community control, and ordering him to complete anger management counseling and pay a $600 fine. On appeal, Moore argues that the trial court erred in failing to rule on his motion for acquittal and in denying his motion for a new trial because an alleged Brady v.Maryland discovery violation occurred; that the trial court erred in finding that he waived any discovery violation by failing to object at trial; and, that the trial court erred by failing to conduct an evidentiary hearing on his new trial motion. Based on the following, we affirm the judgment of the trial court.
 {¶ 2} In October 2007, Moore was charged by complaint with one count of domestic violence in violation of R.C. 2919.25(A), a misdemeanor of the first degree. The charge arose from an incident during which Moore allegedly grabbed his wife, Lisa Brown-Moore, threw her against a counter, grabbed her around the throat, and pushed her to the ground during an argument. Additionally, a temporary protection order was issued against Moore.
 {¶ 3} In November 2007, Moore entered a plea of not guilty to the charge and requested a jury trial. Additionally, Moore filed a motion for production of discovery. *Page 3 
 {¶ 4} In December 2007, the State filed its response to Moore's discovery motion, including a statement that any photographs it intended to use at trial were available for inspection upon request. Subsequently, the State filed a supplemental discovery response, including black and white copies of the photographs of Lisa's injuries taken by the responding deputy shortly after the incident.[1]
 {¶ 5} In January 2008, the trial court held a pre-trial hearing, at which Moore made a motion for continuance of the trial. The motion was based on the fact that Moore had recently asked for and received color photographs of Lisa's injuries, and, based upon the photographs, he wanted to call an expert to testify that the red marks on her body were the result of psoriasis and not any physical abuse from Moore. The trial court subsequently granted the motion.
 {¶ 6} In June 2008, the case proceeded to a jury trial. At trial, Lisa testified that she invited Moore over to the house to spend time with their children, as the two were separated; that when he arrived, he began arguing with her about money and not spending enough time with him; that they went outside to continue the discussion, as she did not want to argue in front of the children; that they *Page 4 
continued to argue outside; that Moore then decided to go back into the house, and she followed right behind him; that, as he entered the house, he grabbed the door and slammed it in her face; that, when she opened the door and entered the house, he grabbed her, pushed her up against the counter, and held her wrists so she could not fight back; that, when she tried to push him back, he grabbed her around the throat and threw her to the ground; that, during the scuffle, she hit her head on a cabinet and hit a chair; that she did nothing to provoke the attack; and, that she eventually was able to push Moore off of her, and he left.
 {¶ 7} During her testimony, Lisa identified nine photographs of her injuries and testified that the photographs were taken by Deputy Jason Asher at her home, and that they were a true and accurate representation of the way she looked on the evening of the altercation. The photographs depicted the various marks on her neck, arms, and back resulting from Moore's attack. The trial court admitted the photographs without an objection from Moore.
 {¶ 8} Deputy Asher of the Union County Sherriff s Office testified that he was dispatched to a home for an alleged domestic violence incident; that, upon arriving at the home, Lisa answered the door and was visibly upset and crying; that Lisa described the details of Moore's attack on her, including how Moore slammed the door in her face and attempted to choke her; that he noticed red marks on her body and hand marks on her throat and wrist; that her story of the incident was consistent with the marks on her body; that he called for a medic *Page 5 
because Lisa was complaining of back pain; that he took several photographs of the marks on Lisa's body; and, that the photographs identified by Lisa were a true and accurate representation of how she looked on that day.
 {¶ 9} Michelle Sesslor, a paramedic and firefighter with the Northern Union County Fire and EMS District, testified that she was dispatched to a house for a complaint of injuries from an assault; that, when she arrived at the scene, she spoke with Lisa, who was very distraught and had difficulty relaying the details of her injuries; that, upon inspecting Lisa's back, she saw multiple red marks; that Lisa also had abrasion marks on her wrist, which was slightly swollen, and redness on her neck; that these injuries did not appear to be self-inflicted; that Lisa described the details of Moore's attack, and that her injuries appeared to be consistent with her description of the incident; and, that, although Lisa's face was red from crying, she did not see anything else on her body that would be consistent with a skin condition.
 {¶ 10} Sesslor testified on cross-examination that she was not aware that Lisa suffered from psoriasis; that the redness on Lisa's face appeared to be the same type of redness exhibited on other areas of her body; that Lisa's face became more red as she was there due to Lisa rubbing it; that stress can also cause symptoms of psoriasis to be exhibited; and, that the hospital records that stated Lisa did not have any bruising or contusions on her body were consistent with her report, as she noted red marks and not bruising. *Page 6 
 {¶ 11} Moore testified that Lisa invited him over to the house to spend time with their children; that, when he arrived, Lisa began talking with him about their marriage and wanted to continue the conversation outside; that they continued to talk outside, and, when the conversation was not going anywhere, he decided to go back inside; that, after he stepped inside, Lisa swung open the door, he turned around, and she was attempting to hit him; that he caught her hands as she tried to hit him; that she then pushed him back, took a step backward, and attempted to kick him; that, as she attempted to kick him, he caught her leg in between his legs, and, while she was attempting free her leg, she fell to the floor; and, that he then let go of her leg and hands and left the house.
 {¶ 12} Subsequently, the jury found Moore guilty of domestic violence, and the trial court sentenced him to a thirty-day jail term, imposed three years of community control, and ordered him to complete anger management counseling and pay a $600 fine.
 {¶ 13} On June 26, 2008, Moore filed a motion for a new trial and request for an evidentiary hearing. Moore's basis for the motion and hearing request was that the photographs of Lisa's injuries introduced by the State at trial were different from the photographs provided by the State in discovery and different from the photographs that Moore obtained after trial through a request to the Union County Sherriff's Office for a CD copy of the images. While Moore admitted that the photographs all portrayed the same images of Lisa, he asserted *Page 7 
that the photographs introduced at trial appeared to be altered to exaggerate the markings on her body. Furthermore, Moore argued that, because the photographs were the same images, merely altered, and because he assumed the State would use the same photographs at trial as it had provided him in discovery, it was difficult for him to notice the alterations at trial and make an appropriate objection.
 {¶ 14} The following day, Moore filed a motion for acquittal pursuant to Crim. R. 29(C), again asserting that the photographs of Lisa's injuries introduced at trial were altered from the photographs he was provided in discovery in order to enhance the depiction of her injuries.
 {¶ 15} In September 2008, the trial court denied Moore's motion for a new trial, finding that competent, credible evidence supported the jury verdict, and that Moore's failure to object to the admission of the photographs at trial constituted a waiver of any alleged error involving the photos. At no time did the trial court conduct an evidentiary hearing on the motion, or rule on his motion for acquittal.
 {¶ 16} It is from his sentence and the trial court's denial of his new trial motion that Moore appeals, presenting the following assignments of error for our review.
 Assignment of Error No. I IT IS ERROR AS A MATTER OF LAW FOR THE TRIAL COURT TO NOT GRANT THE DEFENDANT'S POST TRIAL MOTION FOR ACQUITTAL CRIM.R. 29 WHEN A BRADY V. MARYLAND DISCOVERY VIOLATION HAS BEEN DISCOVERED. *Page 8 
 Assignment of Error No. II IT IS ERROR AS A MATTER OF LAW FOR THE TRIAL COURT TO OVERRULE DEFENDANT'S MOTION FOR NEW TRIAL AND REQUEST FOR EVIDENTIARY HEARING WHEN A BRADY ISSUE HAS BEEN NOTICED.
 Assignment of Error No. III IT IS ERROR AS A MATTER OF LAW FOR THE TRIAL COURT TO OVERRULE DEFENDANT'S MOTION FOR NEW TRIAL AND REQUEST FOR EVIDENTIARY HEARING BY USING THE STANDARD OF WAIVER.
 Assignment of Error No. IV IT IS ERROR AS A MATTER OF LAW FOR THE COURT TO DENY DEFENDANT THE RIGHT TO AN EVIDENTIARY HEARING ON THE MOTION FOR NEW TRIAL SO EVIDENCE CAN BE OBTAINED RE: [SIC] ACCURACY AND HISTORY OF PHOTOS.
 {¶ 17} Due to the nature of Moore's arguments, we elect to address assignments of error one, two, and four together.
 Assignments of Error Nos. I, II, and IV {¶ 18} In his first, second, and fourth assignments of error, Moore argues that the trial court erred in refusing to grant his motion for acquittal and overruling his motion for a new trial and request for evidentiary hearing because a Brady violation occurred. Specifically, Moore asserts that, because the State introduced photographs at trial that were different from the photographs provided in discovery, in that they were altered to enhance Lisa's injuries, the State failed to *Page 9 
disclose material, exculpatory evidence, and the trial court should have conducted an evidentiary hearing and granted a new trial.
 {¶ 19} We review de novo a trial court's resolution of a new trial motion based upon an alleged Brady violation, inquiring whether the defendant's due process rights were preserved. State v. Gibson, 12th Dist. No. CA2007-08-187, 2008-Ohio-5932, ¶ 24; State v. Carroll, 6th Dist. No. L-05-1362, 2007-Ohio-5313, ¶ 57. However, the decision as to whether to conduct an evidentiary hearing on the motion rests within the sound discretion of the trial court and will not be overturned on appeal absent an abuse of discretion. State v. Raver, 5th Dist. No. 00 CA 13,2000 WL 1476134; State v. Anthony, 3d Dist. No. 6-07-23, 2008-Ohio-1998, fn. 1, citing State v. Turner, 168 Ohio App.3d 176, 2006-Ohio-3786.
 {¶ 20} Furthermore, we review a trial court's decision on a Crim. R. 29(C) motion for acquittal using the same standard as is used to review a sufficiency of the evidence claim. State v. Lightner, 3d Dist. No. 6-08-11, 2009-Ohio-544, ¶ 11, citing State v. Carter, 72 Ohio St.3d 545,553, 1995-Ohio-104. When reviewing a record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Monroe, 105 Ohio St.3d 384, 392, 2005-Ohio-2282, citingState v. Jenks (1981), 61 Ohio St.3d 259, superseded by state constitutional amendment on other grounds as stated in State v.Smith, 80 Ohio St.3d 89, 1997-Ohio-355. Sufficiency *Page 10 
is a test of adequacy, State v. Thompkins, 78 Ohio St.3d 380, 386,1997-Ohio-52, and the question of whether evidence is sufficient to sustain a verdict is one of law. State v. Robinson (1955),162 Ohio St. 486, superseded by state constitutional amendment on other grounds as stated in Smith, supra.
 {¶ 21} Pursuant to the United States Supreme Court's decision inBrady v. Maryland (1963), 373 U.S. 83, the State has a duty in all criminal cases to disclose all material exculpatory evidence, and the failure to disclose such evidence results in a due process violation, thereby entitling the defendant to a new trial. See, also, State v.Johnston (1988), 39 Ohio St.3d 48, 60; State v. Hodges (1995),107 Ohio App.3d 578, 583; Crim. R. 16. In order for evidence to be considered material, there must be "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A `reasonable probability' is a probability sufficient to undermine confidence in the outcome." United States v. Bagley (1985),473 U.S. 667, 682. In making a determination about the materiality of the evidence, an appellate court must also consider the cumulative effect that the evidence would have had on the totality of the trial.State v. Carroll, 6th Dist. No. L-05-1362, 2007-Ohio-5313, ¶ 76, citingBagley, 473 U.S. at 683.
 {¶ 22} Here, Moore claims that a Brady violation occurred because the State did not disclose to him the allegedly altered photographs of Lisa's injuries that it used at trial, a CD that contained the unaltered photographs, and the *Page 11 
reference photograph which gave detailed background information on the photos, which he claims would have allowed him to obtain the original material necessary to process accurate photographs and thereby discover the alleged alteration in the State's photographs used at trial. As a consequence of this Brady violation, Moore contends that the trial court should have conducted an evidentiary hearing to establish the history and accuracy of the photographs provided to him in discovery, the photographs used at trial, and the photographs found on the CD he obtained from the Union County Sherriff, and should have granted his motion for a new trial or motion for acquittal.
 {¶ 23} After a thorough review of the record, the photographs used at trial, the photographs provided in discovery, and the photographs developed by Moore from the CD, we find that no Brady violation occurred. There is little discernible difference between the photographs used by the State at trial and the other two sets of photographs. While the redness on Lisa's body is slightly more pronounced in the photographs used at trial, we find this difference to be inconsequential. The redness and marks on Lisa's body are clearly visible and almost identical in all sets of photographs such that Moore cannot complain that he was not provided with a similar set of photographs in discovery as were introduced at trial.
 {¶ 24} Consequently, because we find that all sets of photographs are substantially similar, a reasonable probability does not exist that the outcome of the trial would have been different had Moore been provided the CD of the *Page 12 
photographs, the reference photograph, or the exact same photographs in discovery as were used by the State at trial. Additionally, due to the similarity of all photographs, we find that the trial court did not abuse its discretion in failing to hold an evidentiary hearing on Moore's new trial motion.[2]
 {¶ 25} Furthermore, in relation to Moore's Crim. R. 29(C) motion for acquittal, the basis of his motion was that a Brady violation occurred. However, the proper remedy for a Brady violation is a new trial, not an acquittal. Johnston, 39 Ohio St.3d at 63; State v. Kalejs,150 Ohio App.3d 465, 470-471, 2002-Ohio-6657. Moreover, the motion was made post judgment, and the trial court never ruled on the motion, therefore, the motion remains pending in the trial court and is not properly before us on review.
 {¶ 26} Consequently, because we find that no Brady violation occurred, we find that the trial court did not err in denying Moore's motion for a new trial and evidentiary hearing. Additionally, because the trial court never ruled on Moore's motion for acquittal, any issue relating to that motion is not properly before this Court.
 {¶ 27} Accordingly, we overrule Moore's first, second, and fourth assignments of error. *Page 13 
 Assignment of Error No. III {¶ 28} In his third assignment of error, Moore asserts that the trial court erred in denying his motion for a new trial by finding that he waived the error by failing to object to the photographs at trial. Specifically, Moore argues that the trial court should have addressed the merits of his new trial motion because a constitutional error cannot be waived and because, due to the nature of the alleged photograph alteration, he could not have become aware of the discovery violation until he had an opportunity to thoroughly examine the photographs after the trial.
 {¶ 29} We do note that the trial court did not address Moore's assertion of a Brady violation in his new trial motion because it found that he waived the error by failing to raise an objection to the alleged photograph alterations at trial. However, in our disposition of Moore's first, second, and fourth assignments of error, we found that noBrady violation occurred. Consequently, even if Moore did not waive the error by failing to object, he would still lose on the merits of the motion. Accordingly, Moore's third assignment of error is rendered moot, and we decline to address it. App. R. 12(A)(1)(c).
 {¶ 30} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed
PRESTON, P.J., concurs.
[1] We note that the discovery in this case, including photographs, was filed with the trial court and is a part of the record. This author believes that the better practice is an exchange of information, with each party maintaining a copy of everything that has been provided to the opposing party in case a question arises as to what has or has not been disclosed. By having the parties exchange information, discovery does not become a matter of public record, and it prevents the public disclosure of materials that may prejudice a party, unnecessarily expose facts or information about non-parties, or contaminate a pool of potential jurors.
[2] We also note that, in his reply brief, Moore argues that the State's introduction of allegedly altered photographs violates Evid. R. 1001 through 1004. However, Moore failed to assert this error in his appellate brief, and the State did not address any such error in its brief. As such, this issue has not been properly presented to this Court, and we need not address it. Loc. R. 7(B); App. R. 16(C); In reEstate of Kendall, 2d Dist. No. 21702, 2007-Ohio-3809, ¶ 17. Nevertheless, based on our finding that all photographs are substantially similar, we would find no such error. *Page 14